**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Marina Isakova*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------X
MARINA ISAKOVA,

Plaintiff,

v.

NOBLE PANACEA INC.,
BARCLEE D'ANCONA, and
TODD SMITH,

Defendants.
---------------------------------------------------X

Case No.: 2:26-cv-13921

**COMPLAINT WITH**
**DEMAND FOR JURY TRIAL**

Plaintiff Marina Isakova ("Plaintiff"), by her attorneys, Sage Legal LLC, alleges the following against Defendants Noble Panacea Inc. ("Company"), Barclee D'Ancona, and Todd Smith (collectively, "Defendants"), upon personal knowledge as to her own acts and experiences and upon information and belief as to other matters:

## NATURE OF THE ACTION

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"), for discrimination because of her Russian national origin, including discriminatory termination and a hostile work environment.

1. The Company employed Plaintiff as Retail Sales Manager, North America, from November 1, 2022, until her termination on August 2, 2024.

2. Plaintiff worked from an established New Jersey home office and in the field supporting the Company's retail accounts.

3. Beginning in approximately March 2024, Plaintiff experienced recurring criticism of her communication that targeted her Russian accent, together with jokes and remarks about Russians and Plaintiff.

4. The conduct intensified after Todd Smith became her supervisor in June 2024.

5. The Company terminated Plaintiff on August 2, 2024, citing poor communication skills.

6. That explanation was pretextual.

7. National-origin bias, including bias associated with Plaintiff's accent, motivated the decision.

8. Contemporaneous retailer feedback, Plaintiff's documented responses to performance accusations, and the short interval between positive results and termination support that inference.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under Title VII.

10. The Court has supplemental jurisdiction over the NJLAD claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

11. This Court has specific personal jurisdiction over the Company because it knowingly employed Plaintiff to perform recurring work in New Jersey, arranged to equip her New Jersey home office, and directed and maintained that employment relationship.

12. This Court has specific personal jurisdiction over D'Ancona and Smith because they supervised Plaintiff's New Jersey-based work, directed her performance of duties from New Jersey, and participated in the conduct and termination decision that arose from that employment relationship.

13. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because Plaintiff would have continued working from her established New Jersey home office but for the discriminatory termination, and a substantial part of the events giving rise to the claims occurred in New Jersey.

## THE PARTIES

14. Plaintiff is a natural person of Russian national origin.

15. She was an employee of the Company within the meaning of Title VII and the NJLAD.

16. At all relevant times, she resided and maintained her home office in Morris County, New Jersey.

17. Defendant Noble Panacea Inc. is a corporation engaged in the sale and distribution of luxury skincare products through retail accounts and other channels in the United States and internationally.

18. Upon information and belief, the Company was an employer engaged in an industry affecting commerce and employed at least fifteen (15) employees for each working day in at least

twenty (20) calendar weeks in 2024 or the preceding calendar year, within the meaning of 42 U.S.C. § 2000e(b).

19. Defendant Barclee D'Ancona was, at the times material here, the Company's National Sales Manager, North America.

20. She supervised Plaintiff beginning in approximately March 2024, directed her work, conducted and communicated performance evaluations, and addressed the criticisms later used to justify her discharge.

21. Defendant Todd Smith was, at the times material here, the Company's Director of Sales, North America.

22. He became Plaintiff's supervisor in June 2024, directed her work, conducted and communicated performance evaluations, and participated in the decision to terminate her.

23. Upon information and belief, the Company relied on D'Ancona's and Smith's evaluations and recommendations in deciding to terminate Plaintiff.

24. The Company acted through its officers, managers, supervisors, and other agents in the conduct alleged below.

## ADMINISTRATIVE EXHAUSTION AND TIMELINESS

25. On April 15, 2025, Plaintiff, through counsel, submitted to the United States Equal Employment Opportunity Commission ("EEOC") her charge, signed and notarized on April 10, 2025, and an accompanying narrative alleging national-origin discrimination by the Company.

26. The charge identified a continuing course of conduct from March 10 through August 2, 2024, requested dual filing with the New Jersey Division on Civil Rights, and was assigned EEOC Charge No. 520-2025-04795.

27. Plaintiff's August 2, 2024 termination occurred 256 days before the April 15, 2025 submission and was within 300 days of April 22, 2025, when the EEOC confirmed that the charge had been processed and supplied the charge number.

28. The termination was timely presented under 42 U.S.C. § 2000e-5(e)(1).

29. On July 28, 2026, Plaintiff and her counsel received the EEOC's email notifying them of dismissal of the charge and the right to sue.

30. The email expressly identified itself as official notice of dismissal and stated that suit must be filed within ninety (90) days of receipt.

31. Plaintiff brings this action within ninety (90) days of the July 28, 2026 notification.

32. All conditions precedent to the Title VII claims have been satisfied or have occurred.

## FACTUAL ALLEGATIONS

33. Plaintiff was hired and completed onboarding in October 2022.

34. She was working as the Company's Retail Sales Manager by November 1, 2022.

35. Her duties included driving retail sales, building and maintaining retailer relationships, managing field personnel, and arranging and delivering product training and retail events.

36. Plaintiff was qualified for the position.

37. She performed substantial work in sales, retailer relationships, field-team support, and product training.

38. Retail partners expressly praised her training and work.

39. Plaintiff speaks English with a Russian accent.

40. Her supervisors were aware of her Russian national origin and accent during their interactions with her.

41. Her accent did not prevent her from communicating effectively with retail partners or delivering product training.

42. Plaintiff initially reported to Dawn Hilaczyk. D'Ancona began supervising Plaintiff in approximately March 2024.

43. Smith became her supervisor in June 2024.

44. Beginning in approximately March 2024 under D'Ancona, management frequently criticized Plaintiff's "communication" in a manner that targeted her Russian accent and national origin.

45. The repeated criticism used her accent as a basis to portray her as unable to communicate effectively despite her actual work with retailers.

46. During a workplace virtual meeting, colleagues joked about Russians and made fun of Plaintiff.

47. After Smith became Plaintiff's supervisor in June 2024, he also made jokes and discriminatory remarks toward her.

48. The treatment intensified over time.

49. A photograph of a workplace Microsoft Teams meeting shows the computer date July 10, 2024, and a meeting-chat entry at 11:50 a.m. that states: "The Russians used a pencil" and continues, "(to launch a rocket into space)... maybe we should too?"

50. The preceding messages from the same participant refer to the presentation and computer needing to move into the future and display laughing reactions from Plaintiff's colleagues.

51. Plaintiff experienced the Russian-reference joke in the context of the recurring mockery and accent-related treatment.

52. She experienced this treatment as unwelcome and humiliating.

53. On April 15, 2024, D'Ancona sent Plaintiff a written follow-up to their discussion and copied Human Resources Director Devorah Katz.

54. The email falsely criticized Plaintiff. It also stated that D'Ancona wanted to help Plaintiff develop her communication and organizational skills.

55. Katz was thus included in management's contemporaneous communications about Plaintiff's performance.

56. Plaintiff continued working on retail events, communicating with stores and coworkers, and seeking feedback.

57. She disputes that national-origin-related treatment or her eventual discharge was justified by legitimate communication deficiencies.

58. On March 26, 2024, Plaintiff emailed Holt Renfrew personnel Nicole Atkinson and Yul Lee to plan an April 23, 2024 breakfast product-training event in Toronto.

59. She requested the number of attending beauty advisors, food recommendations, and a television screen for the training.

60. Plaintiff copied relevant participants on that planning email, including Matthew Arbogast, Bonita Tsui, and Adriana Misoul.

61. Arbogast was therefore included in the written planning communications for the event.

62. At Plaintiff's July 25, 2024 midyear review and in follow-up emails, D'Ancona criticized Plaintiff's handling of the Toronto event, including communications about Plaintiff's attendance, breakfast arrangements, follow-up with the store, and the setup for Arbogast's training.

63. Plaintiff disputed those accusations contemporaneously.

64. She explained that she had told Arbogast during their weekly touch-base discussion that she would not attend because sending three (3) people to the event would create unnecessary travel expense.

65. Plaintiff also explained that she had arranged the menu and provided her credit card, but the card was declined and Tsui paid with her own card.

66. She disputed the suggestion that she had simply left breakfast arrangements unaddressed.

67. On July 25, 2024, Plaintiff forwarded the March 26 planning email to D'Ancona and Smith and pointed out that Arbogast had been copied.

68. D'Ancona responded that the email did not establish subsequent confirmations or follow-up and maintained her criticism.

69. At 5:40 p.m. on July 25, Smith told Plaintiff not to "get lost in the weeds on this one example of many" and reiterated "the need for you to improve your written and verbal communication and to take ownership of all aspects of business in your assigned stores."

70. His response addressed the same asserted, but false, communication problem later given as the reason for discharge, and bewilderingly referred to many examples of communication problems, none of which were previously addressed to her.

71. At 6:49 p.m. that day, Plaintiff responded that she was providing follow-up emails, store confirmation, and communications about organizing the training.

72. She also identified an attached email concerning an upcoming training for Stephanie and asked how she could improve her communication in light of the review.

73. Her response sought concrete guidance for ongoing work while disputing management's account of the Toronto event.

74. Management discounted her contemporaneous explanations and continued to characterize her communication in broadly negative terms as a pretext for discrimination because of her Russian national origin without providing her the guidance she sought.

75. Retailer feedback recognized Plaintiff's work.

76. In a message preserved among Plaintiff's screenshots, a Client Development Manager expressly commended "Carla and Marina for their hard work at Noble" and described favorable feedback about the facials, the team, and "Marina's Open House training."

77. An Assistant General Manager responded to that praise in a message addressed to Gaglio, Smith, and Plaintiff, thanking Team Noble for its support in making the event a success.

78. Smith was thus included in retailer feedback expressly praising Plaintiff's contribution.

79. In another email, Smith asked Plaintiff to report the results of a facial event at a retailer in New York City.

80. That request further reflects her responsibility for the account and management's expectation that she could communicate the event's results.

81. On July 31, 2024, a Client Development Manager emailed Carla Fleming, copying Plaintiff, with favorable Noble Panacea spring-event results, reporting an increase of approximately 146.8 percent year-over-year.

82. That email also reported spring-season results of approximately a 26.7 percent increase, and stated that the account was trending higher than the department.

83. On August 1, Plaintiff congratulated Fleming and included Smith and Pambukian in the email chain.

84. On August 2, 2024, at 11:04 a.m., Pambukian replied: "Bravo, team!! Love to see this!;" Smith remained copied.

85. These examples show successful retail activity and communications of which Smith had contemporaneous notice.

86. On August 2, 2024, only eight (8) days after the July 25 review, the Company terminated Plaintiff's employment.

87. During the termination call, Plaintiff was told that the reason was poor communication skills.

88. The Company's August 2, 2024 termination letter, signed by Human Resources Director Katz, confirmed that the separation was effective that day and stated that the Company considered it in the parties' mutual best interest to part ways.

89. The letter advised that access to Company email, voicemail, document storage, and computer systems would be terminated.

90. The Company's stated communication rationale was a pretext for discrimination because of Plaintiff's Russian national origin.

91. The inference arises from the combination of recurring accent-related treatment and national-origin-related remarks, supervisory participation, management's treatment of her contemporaneous explanations, and favorable retailer feedback communicated to Smith shortly before her discharge.

92. As a result of Defendants' conduct, Plaintiff lost salary and employment benefits and suffered emotional distress and humiliation. She sought psychological treatment in connection with the distress she experienced.

## FIRST CAUSE OF ACTION
## NATIONAL-ORIGIN DISCRIMINATION AND DISCRIMINATORY TERMINATION

*Title VII — 42 U.S.C. § 2000e-2(a)(1)*

93. Plaintiff repeats and realleges paragraphs 1 through 93 as if fully set forth herein.

94. Plaintiff's Russian national origin is protected under Title VII.

95. The Company was her covered employer, and Plaintiff was qualified to perform the Retail Sales Manager position.

96. The Company subjected Plaintiff to adverse employment action by terminating her employment on August 2, 2024, thereby depriving her of compensation, benefits, and continued employment.

97. Plaintiff's Russian national origin, including bias associated with her Russian accent, was a motivating factor in the Company's decision to terminate her.

98. Absent national-origin discrimination, the Company would not have terminated her employment when it did.

99. The Company intentionally discriminated against Plaintiff through the managers and agents who evaluated, recommended, authorized, and implemented her termination, in violation of 42 U.S.C. § 2000e-2(a)(1) and (m).

100. As a direct and proximate result, Plaintiff sustained lost compensation and benefits and other economic and noneconomic injuries.

101. She seeks relief under 42 U.S.C. §§ 2000e-5(g), 2000e-5(k), and 1981a.

102. The management personnel responsible for the discriminatory decision knew of her federally protected right to be free of national-origin discrimination and acted with malice or reckless indifference to that right, supporting punitive damages upon the required proof.

**SECOND CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN**
*Title VII — 42 U.S.C. § 2000e-2(a)(1)*

103. Plaintiff repeats and realleges paragraphs 1 through 103 as if fully set forth herein.

104. Plaintiff was subjected to unwelcome harassment because of her Russian national origin and accent, including recurring national-origin-related jokes and remarks and discriminatory treatment of her communication by supervisory personnel.

105. Viewed cumulatively and in context, the recurring accent-related criticism, national-origin-related jokes and remarks, and supervisory treatment described above were sufficiently pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

106. The conduct began during D'Ancona's supervision, intensified after Smith became her supervisor in June 2024, and continued into the period preceding discharge.

107. The conduct detrimentally affected Plaintiff, causing humiliation and emotional distress, and would detrimentally affect a reasonable employee of Russian national origin in like circumstances.

108. The Company is liable for the hostile work environment because the discriminatory supervisory treatment culminated in Plaintiff's discharge, a tangible employment action, and because the Company knew or should have known of the harassment through the participation and awareness of its management personnel and failed to take reasonable corrective action.

109. As a direct and proximate result, Plaintiff sustained emotional distress, humiliation, and other injuries.

110. She seeks the relief authorized by Title VII and 42 U.S.C. § 1981a.

**THIRD CAUSE OF ACTION**
**NATIONAL-ORIGIN DISCRIMINATION AND DISCRIMINATORY TERMINATION**
*NJLAD — N.J.S.A. 10:5-12(a)*

111. Plaintiff repeats and realleges paragraphs 1 through 111 as if fully set forth herein.

112. Plaintiff's Russian national origin is protected under the NJLAD.

113. The Company was her employer within the meaning of the NJLAD, and Plaintiff was qualified to perform the Retail Sales Manager position.

114. The Company subjected Plaintiff to adverse employment action by terminating her employment on August 2, 2024.

115. Plaintiff's Russian national origin, including bias associated with her Russian accent, was a determinative or motivating factor in the Company's decision to terminate her.

116. Absent national-origin discrimination, the Company would not have terminated her employment when it did.

117. The Company intentionally discriminated against Plaintiff in violation of N.J.S.A. 10:5-12(a).

118. As a direct and proximate result, Plaintiff sustained lost compensation and benefits, emotional distress, and other injuries.

119. She seeks the relief authorized by the NJLAD, including compensatory and punitive damages, attorneys' fees, and costs.

**FOURTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN**
*NJLAD — N.J.S.A. 10:5-12(a)*

120. Plaintiff repeats and realleges paragraphs 1 through 120 as if fully set forth herein.

121. Plaintiff was subjected to unwelcome harassment because of her Russian national origin and accent.

122. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile or abusive working environment under the NJLAD.

123. The Company is liable for the hostile work environment under the NJLAD.

124. As a direct and proximate result, Plaintiff sustained emotional distress, humiliation, and other injuries. She seeks the relief authorized by the NJLAD.

**FIFTH CAUSE OF ACTION**
**AIDING AND ABETTING NATIONAL-ORIGIN DISCRIMINATION AND HARASSMENT**
*NJLAD — N.J.S.A. 10:5-12(e)*

125. Plaintiff repeats and realleges paragraphs 1 through 125 as if fully set forth herein.

126. D'Ancona and Smith aided, abetted, incited, compelled, or coerced the Company's discriminatory and harassing conduct, and/or attempted to do so, in violation of N.J.S.A. 10:5-12(e).

127. Each knowingly and substantially assisted the discriminatory treatment and the termination decision that was motivated by national-origin bias.

128. As a direct and proximate result, Plaintiff sustained injuries for which D'Ancona and Smith are individually liable under the NJLAD.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants as follows:

A. Declaring that Defendants violated Plaintiff's rights under Title VII and the NJLAD;

B. Awarding back pay, lost benefits, and other recoverable economic losses in amounts to be determined at trial, subject to applicable mitigation and offsets;

C. Ordering reinstatement with appropriate seniority and benefits, or, if reinstatement is impracticable, awarding front pay in lieu of reinstatement;

D. Awarding compensatory damages for emotional distress, humiliation, and other recoverable noneconomic injury, and punitive damages upon the required showing, subject to applicable statutory limits;

E. Awarding reasonable attorneys' fees, costs, and recoverable litigation expenses pursuant to 42 U.S.C. § 2000e-5(k) and the NJLAD;

F. Awarding prejudgment and post-judgment interest as permitted by law; and

G. Granting such other and further relief as the Court deems just, equitable, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: Jamaica, New York
October 26, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Marina Isakova*